JOHN L. LOBDELL *v.* THE UNION BANK OF LOUISIANA AND JOHN L.
LEWIS, Sheriff.

Plaintiff made opposition to the sale of two slaves, seized by *Lewis*, Sheriff, in the suit of the *Union
Bank* v. *Hereford*, in the District Court of East Baton Rouge, in which Court he claimed damages
against the defendants—alleging the slaves to be his property. Defendants excepted to the juris-
diction, on the ground that their domicil was in New Orleans.

*By the Court.* The plaintiff's claiming title to the slaves seized, the opposition was properly made
by petition to the Court from which the order issued, as required by Article 398, of the Code of
Practice; and Article 400, of the same Code, expressly provides, that if the sale has not been en-
joined, the opposition shall not prevent the Sheriff from selling the property under seizure, but in
such case he shall be personally responsible for all damages which the sale may occasion
the intervening party, and the Sheriff shall have his recourse against the party who has obtained
the seizure.

When the Sheriff sells property, to the sale of which opposition has been made, the opponent can
recover the property from the purchaser. His claim against the Sheriff is for the damages which
the sale may have occasioned him—not for the value of the property sold.

APPEAL from the District Court, Sixth District, Parish of East Baton
Rouge. *Robertson*, J.

The above statement of facts is taken from the opinion of the Court. The
suit was commenced by petition. In the suit of the *Union Bank* v. *Hereford
and wife*, in which the seizure was made, no opposition was made by the plain-
tiff. In this suit an Injunction was prayed for but not ordered.

*Lobdell*, in *propria persona*, and *Beale*, were counsel of record in the District
Court, for the plaintiff. No counsel seems to have appeared for the plaintiff in
the Supreme Court. *Denis*, for the defendant and appellant.

Had the Bank the right to seize slaves mortgaged to them by *Charles M. H.
Myott* anterior to the year 1839, as they have done, is the only question on the
merits of this litigation.

The plaintiff, *John Lobdell*, alleges that these slaves are his property and
have been in his possession for many years. He complains of the seizure and
claims damages from the Bank and from *John L. Lewis*, the Sheriff. He *has
not thought fit to file a third opposition* in the suit of the *Bank* v. *Hereford*,
but for reasons best known to himself, he has preferred to bring an original
and direct action in damages against the Bank and the Sheriff. He was at
liberty to do so, but what he had no right to do, I believe, was to bring his
suit against the Bank, out of the jurisdiction of the Parish of Orleans, where
is by law and in fact, located the said Bank's principal establishment.

A special exception to the jurisdiction of the Sixth District Court for the
parish of East Baton Rouge, was filed by the Bank and by *Lewis*, Sheriff of the
parish of Orleans.

These exceptions were over-ruled by the District Court. It is a difficult
matter to understand, on this point, the reasoning of the Sixth District Judge.

LOBDELL
v.
UNION BANK.

I will, therefore, not attempt to combat it. I will merely state, that according to the well known rule of our law, every one must be sued in the place of his domicil or residence; a corporation has a domicil as well as an individual, and the petitioner has taken the trouble himself, in his petition, to inform the Court that the Union Bank is located in the city of New Orleans, and that *John L. Lewis* is the Sheriff of the city and parish of New Orleans.

There are some few cases specified by law, in which, contrary to the general rule, persons can be sued out of their domicil, but the present case is not one of them.

It is clear that the Sheriff of the parish of Orleans is the officer of all the Courts of the State of Louisiana, and when ordered to execute an order from a District Court, he is amenable before that Court, by rule taken in the suit, in which the order issued, for not proceeding or for proceeding wrong. But if the party aggrieved does not choose to proceed against him, in the suit, out of which the order issued, and prefers to bring an original action in damages against him for his acts, then the original suit ought to be brought at the domicil of the defendant.

The same rule will apply to the Bank, certainly after it has caused to be issued, the order of seizure in the case of the *Bank* v. *Hereford*, and the two slaves *John Curry* and *Tom Hall* had been seized, *Lobdell* might have formed his third opposition in said suit, to establish his title to the slaves, and then compel the Bank to join issue with him according to Art. 398 of the Code of Practice, but no where do we see that a third opponent has any other right but to establish his title to the thing seized, or his better right to be paid out of the proceeds of the thing sold. If he wants anything else he must proceed as any other suitor in law.

C. P. Art. 399 provides that at the request of the third opponent the Court may enjoin the Sheriff not to proceed to sell the property thus claimed, provided such third person give security to be responsible for all damages, &c.

Art. 400 says "that if the third person who has *intervened in the suit* (always contemplating that the intervention of the third opponent must be in the original suit, and not a separate suit) has not enjoined the sale of the property of which he claims the ownership, or has failed to furnish the surety required, his opposition shall not prevent the Sheriff from selling the property under seizure, but in such case the Sheriff shall be *personally responsible* for all damages which the sale may occasion to the intervening party, and the Sheriff shall have his recourse against the party who has obtained the order of seisure. If the opposition be sustained, the sale made by the Sheriff shall be null."

This means, in my humble opinion, that if security has not been given, and no injunction has issued, the Sheriff is not before the Court; he is no longer to be dealt with as Sheriff. He is personally responsible; it becomes, on his part, a personal debt; he must be sued in damages. Where? Certainly, as every other person, at his domicil.

The whole tenor of the section treating of the third opposition, in the Code of Practice, indicates that such opposition must be filed in an original suit, and is not of itself an original suit.

Art. 345 says, that "this opposition is a demand brought by a third person not originally a party in the suit," but who, of course becomes a party by his opposition.

Finally, if an opposition, *a tierce opposition*, is filed, it must be in the original suit. That opposition can only be for the causes specified in the Code of Practice. If the party seeks damages, or any other remedy, he must then sue by an ordinary action, at the domicil of the defendant.

I believe the Court will feel no hesitation in reversing the judgment of the District Court, and in dismissing the case for want of jurisdiction in the Sixth District Court.

If, however, it be otherwise, the case is not a doubtful one, on the merits.

In the case of *Skillman* v. *Purnell et al*, 3 Louisiana Reports, p. 495, Judge *Porter* says: "The Code of Practice, which gives the right to third parties to oppose an execution, limits that right to those cases where the person making the opposition is the owner of the thing, or has a privilege on it. All other rights, if any such there be, which the party may possess, must be exercised by an ordinary action. They furnish no ground for this mode of relief."

ROST, J.* (SLIDELL, J., dissenting.) The plaintiff made opposition to the sale of two slaves, seized in his possession under an order of seizure and sale, at the suit of the *Union Bank* v. *Hereford and wife*, on the ground that they were his property, and that the Bank has no right thus to proceed against them, he claims from the Sheriff and the Bank the damages sustained by reason of the wrongful seizure.

The defendants excepted to the jurisdiction of the Court of the parish of East Baton Rouge, on the ground that, although the writ issued from that Court, it was directed to *John L. Lewis*, the Sheriff of the parish of Orleans, who executed it, and any claim for damages against him must be brought in the Court where he exercised his functions.

We are of opinion that there is no error in the decree over-ruling the exception. The plaintiff claiming title to the slaves seized, the opposition was properly made by petition to the Court from which the order issued, as required by Article 398 of the Code of Practice; and Article 400 of the same Code expressly provides that, if the sale has not been enjoined, the opposition shall not prevent the Sheriff from selling the property under seizure, but in such case he shall be personally responsible for all damages which the sale may occasion the intervening party, and the Sheriff shall have his recourse against the party who has obtained the order of seizure.

The sale not having been enjoined, the slaves seized were sold, and the right of the defendant to recover damages from the Sheriff in this suit, if the seizure was unlawful, rests on that express provision of law.

On the merits, the order of seizure issued on two mortgages of *Favrot & Joyce*, in favor of the *Union Bank*, and an act of mortgage by *Hereford and wife*, also to the *Union Bank*, containing an assumption of the mortgage of *Favrot & Joyce*, and also of a mortgage consented by *Charles H. Miot* in favor of the same institution.

The slaves seized in this case are found in none of the acts of mortgage upon which the order of seizure was granted. They are stated to be two of the slaves originally mortgaged by *Miot*; but there is no certified copy of that mortgage in the record, and its existance is denied by the plaintiff. Considering, as urged in behalf of the defence, that there are facts and admissions in the record from which its existence may be implied, there is nothing to show that it was authentic and had been properly recorded, and until that showing was made, the Bank could not proceed by the *via executica*, and the order of seizure and sale was unadvisedly granted without it.

As to the remedy of the plaintiff, Article 400 of the Code of Practice, already cited, provides that if the opposition be sustained, the sale made by the Sheriff shall be null. The law considers all purchasers as affected with notice of the opposition, and the only right it gives to the party making it, besides that of being indemnified for the damages which the sale may have occasioned him, is to be restored to the possession of the property, as if no sale had taken place. The value of the property sold forms no part of the damages for which the Sheriff is liable, and the judgment condemning him to pay that value is erroneous.

The plaintiff not having asked to be restored to the possession of the slaves, we can make no final decree on this part of the case.

---

* EUSTIS, C. J., recused himself, being a stockholder in the Union Bank.

LOBDELL
*v.*
UNION BANK.

The slaves seized were taken from the plaintiff on the 16th May, 1851, nearly two years ago, and are shown by the evidence to be valuable men. Taking into consideration this and other facts in the record, we do not consider the allowance of $400 damages, made by the District Court, as being excessive.

It is ordered, that the judgment in this case be reversed. It is further ordered, that the plaintiff recover from the Sheriff, *John L. Lewis*, the sum of $400 and the costs of the District Court.

It is further ordered, that *John L. Lewis* recover from the Union Bank of Louisiana the sum of $400 and the costs of the District Court.

It is further ordered, that the plaintiff pay the costs of this appeal, and that his right to recover the slaves *Tom Hall* and *John Currey* be reserved.