By the Court,
Jones, J.
It will be perceived that one of the findings by the court below is, “ That about the 18th September, 1856, the plaintiff entered upon the possession of the premises mentioned in the complaint, and commenced the erection of a dwelling house thereon, in conformity with said agreement, and continued the work thereon, until about the latter part of February, 1857, when he suspended said work and did not resume the same.” And another finding is, that the plaintiff violated his contract with the defendant’s testator by the total suspension of all work, and by the non-completion of said house on the 1st of May, 1857, the'day limited by the contract for its completion.
The question then arises, what is the effect of this breach of contract by the plaintiff ?
At common law, under the cases of Champlin v. Rowley, (18 Wend. 193,) Harmony v. Bingham, (12 N. Y. Rep. 99,) Smith v. Brady, (17 id. 173,) Tompkins v. Dudley, (25 id. 272,) and Catlin v. Tobias, (26 id. 217,) the plaintiff was guilty of a breach of his contract, and having failed to fully perform the condition precedent to his right to receive the deed, by omitting to erect the building by the day limited, he could neither bring an action for damages based on the defendants’ refusal to deliver the deed, nor an action on the quantum meruit, for the work actually performed, and materials actually .furnished; but the defendant, under the authority of Jackson v. Moncrief, (5 Wend. 26;) Wright v. Moore, (21 *97 id. 230,) could at law bring an action of ejectment, to recover possession of the property.
The defendants having peaceably obtained possession, there is no necessity for them to bring the possessory action of ejectment.
The remedy of the plaintiff, if he has any, is in equity. (Wright v. Moore, 21 Wend. 230.) The plaintiff has in fact brought an action in equity, to obtain possession and protect such rights and interests as he claims to have. He claims that in equity there is a principle, to the effect that time is not an essential part of a contract; that in this case time would not in equity be regarded as of the essence.of the contract, and consequently, although he has not performed by the time limited, he is yet entitled to relief in equity.
It is true it is stated in many English and American cases that in a contract for the sale and purchase of land, the time limited for the completion of the sale and purchase is not in general regarded in equity as an essential part of the contract.
I do not, however, understand this doctrine to extend so far as to enable a party to obtain relief against non-performance by the day, in cases where he shows neither any good reason for such non-performance, nor any peculiar equity.
Chancellor Kent, in Benedict v. Lynch, (1 John. Ch. 370, cited from pages 375, 376, 379,) observes: “It may then be laid down as an acknowledged rule in courts of equity, that when the party who applies for a specific performance has omitted to execute his part of the contract, by the time appointed, without being able to assign any sufficient justification or excuse for his delay, and when there is nothing in the acts or conduct of the other party that amounts to an acquiesence in that delay, the court will not compel a specific performance. The notion that a party may be utterly regardless of his stipulated payments, and that a Court of Chancery will almost at any time relieve him from the penalty of his gross negligence, is very injurious to good morals, to a lively sense of obligation, to the sanctity of contracts, and to the character *98 of the court.. It would be against all my impressions of equity to help those who show no equitable title to relief.”
He 'then, after remarking that it was formerly supposed that the time fixed on for the completion of the contract was quite immaterial, proceeds to review the cases, and after such review observes: “ From the review which I have taken of the
cases, the general principle appears to be perfectly established, that time is a circumstance of decisive importance in these contracts, but it may be waived by the conduct of the party; that it is incumbent on the plaintiff calling for a specific performance, to show that he has used due diligence, or if not, that his negligence arose from some just cause, or has been acquiesced in.”
There is no case, (not even those where it is asserted that time is not of the essence of the contract,) which does not require the plaintiff to show at least thus much, to entitle himself to relief.
In the case at bar, the plaintiff does not bring himself within these principles.
The court below has not found as a fact, nor does the testimony satisfactorily show, that there was any excuse for the delay ; nor does there appear to be any special equity.
It is true, the defendant swears he was sick, from 5th or 6th April, till after May 1st. This, however, could not excuse the suspension of the work, .from the latter part of February to the 5th of April, a period of six or seven weeks. Non constat but that if he had prosecuted the work diligently during that period, he would have finished the work before he was taken sick. Nor does it appear how sick he was ; he may not have been so sick as to prevent him from finishing the house through the agency of others; He does not swear he was, and he does not testify that this sickness prevented him from completing. All this is to be inferred from the. bare fact that he was sick. I think the fact does not justify the inference,
It is also true, that the defendant testifies that he proceeded as fast as the weather would permit, and with as many men *99 as could work then to advantage, considering the weather up to the time he was taken sick. At fol. Ill he testifies that he was going on with the work all the time, except when the weather prevented, from the 29th of March to April 6. As I understand this testimony, he says, that he went on with the work up to the 29th of March, .and that it was only from the 29 th of March to April 6 th, that the weather prevented its prosecution.
The court below found that he absolutely ceased work in the latter part of February,- a month prior to March 29. This finding is in direct conflict with the plaintiff’s testimony at fol. Ill and 130. With the discredit cast by this finding on the plaintiff’s testimony on this material point, the court, on appeal, should attach but slight importance to the evidence of sickness.
The testimony at folio 111, seems to me, to dispose of the excuse arising from the weather. That testimony shows that the only delay caused by the weather was eight days, from March 29 to April 6. Thus there is over a month of total suspension left unaccounted for. This unexcused delay of one month; leads to the conclusion that the assigned cause, of weather and sickness, did not prevent the performance, but that some motive which was not disclosed led to the nonperformance, and that the weather and sickness were first thought of as excuses when this action was commenced.
Upon the evidence, if the case were tried before me, I should feel very unwilling to find that non-performance by the day was prevented either by the weather, or sickness, or both combined. Feeling thus, I cannot on this appeal find such to be the fact, for the purpose of sustaining the judgment below, when the judge below has not chosen to base his decision on the assximption of the existence of such facts.
It is also true, that if the plaintiff is not relieved, he will suffer a loss of time and materials. That bare fact, however, constitutes no special equity ; it is common to all cases. As the case at present stands, this loss appears to be the result of the plaintiff’s own culpable negligence ;' and he cannot call *100 on equity to relieve him from it. Besides, it does not appear that the value of 'the time and materials is more than sufficient to reimburse the defendant for his advances, interest thereon, and interest on the purchase money. .
For these reasons, it would be improper for the court to compel a specific performance. The same reasons would also debar the plaintiff from recovering damages in a court of equity. If by reason of his default the court declines to decree specific performance, it will also decline to award damages.
Thus, neither under the principles of the common law, nor those of equity, is the plaintiff, as the case now stands, entitled to any damages ; unless the clauses in the contract relative to the sale of the plaintiff’s interest have the effect of depriving the defendant of this right, which he would otherwise acquire, by reason of non-performance by the day.
I think these clauses have not such an effect. The tenor of them seems to be to enable the defendant to press forward the work in case of delay during the running of the contract; so, also, in case of an abandonment, or refusal to proceed during the running of the contract, to provide a means by which the defendant, without waiting for the contract to expire by limitation, may obtain repayment of his advances, with interest, and terminate the contract.
■ These clauses give to the defendant rights which he otherwise would not possess. They were inserted for the benefit and protection of Hogan, not of Chase. They give Hogan the right, if he saw fit to exercise it, to terminate the contract in a certain manner prior to its expiration. There is nothing, however, compelling him to exercise that right. It was entirely optional with him. He might wait until the time limited for performance expired, and then, in case of non-performance, put the contract at an end and resume possession of the property, saying, I do not desire to exercise the right given me by these clauses for my benefit and protection. A review of all of the provisions of the contract shows this to be the proper construction of these clauses. The defendant was to sell the land and make advances, to give a deed on the completion of *101 the house, and to take back a mortgage for the purchase money, the advances and interest thereon. . The contract provides that the house should be completed prior to the first of May, and that the deed and mortgage should be delivered on the completion of the house.
It is evident that the defendant had a great interest in having the house completed as soon as possible, for it was on the mortgage that he relied for his security for the purchase money of the land and for his advances ; and also that he might devise some means whereby he might readily avoid making further advances, and recover back that already made, in case the house did not progress satisfactorily.
Under the circumstances, the defendant may well have said to-Chase,. “ I wish some provisions inserted whereby I may, if you are dilatory, spur you up so as to get this house completed as much before the 1st of May as possible, and so that if you at any time before May 1st abandon or refuse to go on with the contract, I may readily get back my advances, and get rid of you ;” and Chase may well have replied to this, “ Y ery well, I see no harm in this ; I have contracted to finish the house before the 1st of May, and expect to do so, therefore, said provisions cannot, as I see, hurt me.”
Therefore, the provisions were agreed on, and inserted. But to proceed a little further. Chase contracted to finish the building by May 1st. It is fair to presume that he intended and anticipated to be certainly able to comply with the contract. There is nothing in the contract which suggests that Chase had in his mind the possibility of .being prevented from complying, by any casualty ; therefore, the provisions in question could not have been inserted for his benefit or protection, in this respect.
Again, the provisions could not have been inserted with the view of benefiting or protecting the plaintiff in the event of his non-performance by the day, either negligently or willfully. It cannot be conceived that the defendant would consent to such a premium on negligence or willfulness;. besides, it is contrary ' to the spirit of the provisions.
*102 Thus, the whole context of the contract, as well as the peculiar wording of the provisions, lead irresistibly to the conclusion, that the sole effect of the clauses is to invest the defendant, for his sole benefit and protection, with certain rights, which he might, or might not, at his option, exercise during the running of the contract; that this is their only object, and that it was so understood and intended by both parties when the contract was made.
It follows, as a necessary consequence, that these clauses have (if they have not been effectively exercised before the 1st of May) no effect whatever on the legal rights and remedies of either party arising from non-performance by the day.
The following questions, viz. 1st. Whether a court of equity will require stronger grounds to induce, its interference to relieve from the consequences of non-performance by the day in cases where it considers time to be of. the essence of the contract than in cases where it considers time not to be of the essence; 2d. As to whether in the contract in question, time is of the essence or not •; 3d. As to whether a delay of one year in bringing suit would not be regarded as such an acquiescence as that the court would grant no relief even in cases where time was not of the essence; 4th. As to whether under a proper construction of all the decisions, time is not always of the essence; 5th. As to whether a court of equity can, in any case, decree damages except in lieu of a specific performance which it decrees the plaintiff entitled to, but which cannot be enforced in consequence of the defendant’s inability to perform ; 6th. And as to whether when defendant’s inability to perform arises before the commencement of the action, the court can, in any case, decree damages in lieu of a specific performance, which it seems the plaintiff would have been entitled to, had it not been for such inability of the defendant, have not been considered or determined.
It is unnecessary to consider the 1st, 2d and 4th queries, since the conclusion has been arrived at that -even under the equity principles applicable to contracts, when time is not of the essence, the judgment cannot be sustained on the facts found, *103 nor on those facts with other uncontroverted facts in the case. It is also unnecessary to determine the 5th and 6 th queries, since the case as presented is not one in which damages can he awarded. On a new trial, a case may possibly be made which will raise these questions; it will be more proper to determine them then than now.
The third query is more properly a matter of evidence. Answering it in the negative, would not entitle the plaintiff to hold his judgment, since it is reversed on considerations entirely disconnected with this one. An affirmative answer, on the other hand, would not only call for a reversal of this judgment but a rendition of judgment absolute for the defendant.
It is a matter which undoubtedly would have a great bearing on the question, whether any relief should be granted. Its force, however, may be strengthened or weakened by other matters ; thus, if at the time of the suspension of the work, the market was such that the plaintiff anticipated a loss on the contract, that would account for the suspension; and if at the time of commencing the suit, the market had so improved as to render a profit certain to arise from completion, that would account for the suit. Under these circumstances, the year's delay would probably be an absolute bar, under the cases of Rogers v. Saunders, (16 Maine Rep. 92, 99,100,) and Alley v. Deschamps, (13 Vesey, 228.) On the other hand, its effect may, by circumstances to be proved, be either greatly weakened or wholly destroyed. I do not, therefore, think it advisable to determine its effect, on this appeal.
A few words respecting the decision made by a former general term of this court, in this case.
That decision was rendered on an appeal taken from a judgment entered on a decision made upon a former trial. The judge, before whom that former trial was had, held that the parties by the special provisions before alluded to had prescribed the mode in which the plaintiff's interest was to be foreclosed in case of default, and that the defendant had not properly pursued that mode, in that he had become the purchaser *104 at the sale made under those provisions. He therefore held that such purchaser could not be allowed to foreclose the plaintiff from a right to an account, and consequently directed an account. His findings of facts upon which he rendered this decision were substantially the same as those before us on this appeal. There does not, however, appear to have been any evidence tending-to show any reason for non-performance, and there was a finding that Chase had furnished materials and performed labor to the amount of $3040.88. These constituted the only differences between the case as then and as now presented to the appellate court.
The appeal taken from the judgment entered upon such former special term decision was heard before two judges only. One of the judges held that as the plaintiff had shown no excuse for the non-performance, he could not recover damages at law, nor could he obtain either a specific performance or damages in equity. He also held the special provisions and the acts done thereunder could have no bearing whatever in the determination of the rights of the parties. He also held that while the plaintiff was not entitled to recover any thing, the defendant was entitled to recover damages against the plaintiff for non-performance. He also held that if the action could be maintained, in any shape, the defendant should be allowed, in diminution of the plaintiff’s claim, for the damage to the building by the weather. He therefore decided that the judgment should be reversed and a new trial had.
The other judge, without considering the case in the aspects in which his associate had considered it, proceeded to discuss the point whether the defendant could rightfully purchase at the sale made by him, and then, without coming to any conclusion on this point, states that the principle on which the account was taken below, was erroneous, for the reason that no allowance was made for the damages sustained by the building by exposure to the elements, intermediate the time when the plaintiff abandoned the work and the subsequent sale of the premises. He then lays down what he regards as the true *105 principle, and decides (but his opinion furnishes no clue to the ground on which he bases the decision,) that if on an account taken on such principle, a balance should be in favor of the plaintiff, Hogan should pay that balance, but if the balance should be in favor of Hogan, he should have judgment for it. On the ground, then, that the principle of the account as taken in the court below was erroneous, that the plaintiff was entitled to an account to be taken on certain other principles, and that the party in whose favor the balance should be found to be, on such new accounting, was entitled to judgment against the other, he concurred in reversing the judgment below and granting a new trial.
It is apparent that on that appeal nothing was decided except that, assuming this action could be maintained in any shape, the defendant should be allowed for the damages to the building by the weather. It may then be regarded as the law of this case that the defendant is entitled to such allowance if the plaintiff can maintain this action in any shape. Rut the decision settles no other point, particularly not the question as to whether the plaintiff had any right of action either legal or equitable, as the judges did not agree on this point, one of them holding that the plaintiff had no right of action whatever, and the other holding he had a right of action in equity for an account and for the payment of the balance found due him on such account.
The result from the above views is, that the judgment must be reversed, and a new trial ordered, for the reason that the plaintiff, to entitle himself to any recovery, must show at least a sufficient excuse or reason for his non-performance.
It is not, however, intended to be decided that if he succeeds in showing a sufficient excuse he will be entitled to a recovery.
Whether showing a sufficient excuse will give him a prima facie cause of action or not, and whether if it does, it may not be overcome by other facts and circumstances, are questions which had better be reserved until they come before us *106 in a case the judgment wherein is founded on such excuse or such other facts and circumstances.
Judgment reversed and a new trial ordered, with costs .of appeal to the appellant, to abide the event.