No. 2300.—BENNER & RANLETT *v.* J. T. MICHEL and P. GALLAHER.

The fact that the owner of a drug store permitted a party, who was employed therein as a clerk, to manage its affairs for a share in the profits, to hold himself out to the world as the owner thereof, did not give a judgment creditor of such clerk on a debt which originated before he had any connection with the store as a clerk, the right to seize and sell the store as the property of the clerk, in satisfaction of the judgment against him individually.

The sheriff and seizing creditor are liable, *in solido*, in case the sheriff has seized and sold the property of a third party, after being notified that such property was not that of the judgment debtor; and in fixing the amount of liability, the estimate placed on the property shortly before the seizure will be taken as a basis, rather than the vague appraisement made at the time of the sale.

APPEAL from the Second Judicial District Court, parish of Jefferson. *Pardee, J.* G. W. H. Marr and J. N. Brickell, for plaintiffs and appellees. W. T. Scott and E. C. Kelly, for defendants and appellants.

TALIAFERRO, J. The defendants are sued for $2000 as damages alleged to have been sustained by the plaintiffs from the illegal seizure and sale under execution by defendants of the property of the plaintiffs. The answer is a general denial. Plaintiffs had judgment for $1000, and defendants have appealed.

62

Gallaher having obtained a judgment against B. F. Hughes, caused execution to issue, and the sheriff, Michel, seized as property of Hughes the contents of a drug store in the city of Jefferson at the corner of Magazine and Jena streets, and after an inventory and appraisement of the effects seized and advertisement made, sold the entire stock for $163.

It is in proof that after the seizure was made the sheriff was distinctly informed by Benner, one of the plaintiffs, that the property seized did not belong to Hughes, but to himself and Ranlett.

The defendants show that the contents of the drug store were under the control of Hughes, who held himself out to the world as the owner; that he kept the establishment, made sale of the drugs, and was considered the owner. They contend that the plaintiffs' claim as owners is simulated, and set up to screen the property of Hughes from the pursuit of his creditors.

It appears from the evidence that in the latter part of the year 1865, and in the early part of 1866 this apothecary establishment belonged to a Dr. Hynes, who, during the time he kept it, had Hughes employed as a clerk; that Hynes sold the establishment to Ranlett, at the price of $1700, the estimated value of the entire stock, as appears by the receipt of Hynes, dated seventeenth March, 1866. An instrument is in evidence dated eleventh of March, 1866, and signed by Ranlett and Hughes, the purport of which is that they were to carry on the drug and apothecary business in the city of Jefferson; that the business was to be carried on in the name of B. F. Hughes, who was to keep the accounts and render a full statement of affairs at the end of each month and pay over to Ranlett such sum of money as might be on hand after deducting the expenses of carrying on the business. Ranlett was to buy the stock in trade of Hynes, the profits and losses to be equally divided.

The seizure was made on the ninth of August, 1867. On the nineteenth of June previous an estimative inventory of the stock of drugs on hand was made and, as stated, the value of the drugs was set down according to wholesale prices, the aggregate amount being $1103. Hughes testifies that between the time of making the inventory and the seizure there was sold an amount between fifty and one hundred dollars. The sheriff's inventory and estimate seem to have been made carelessly, and the drugs set down at about what the appraisers judged they would be likely to bring at an auction sale.

The fact that the plaintiffs permitted Hughes to hold himself out to the world as the owner of the establishment would, according to well established principles, involve a responsibility to persons giving him credit on the faith of the pretended ownership. Still, under the facts shown in this case, we think no liability results against them. The

judgment of Gallaher against Hughes arose from a debt contracted jointly by the latter and one Spann, before Hughes had anything to do with the drug store. The defendants were notified that the property they had seized belonged to the plaintiffs, but they proceeded notwithstanding to sell it, and consequently the sale was made at their peril.

The evidence, we think, sufficiently shows that the plaintiffs were the owners of the property sold. Hughes was destitute of means. That Ranlett paid the whole price of the stock purchased from Dr. Hynes, there can be no doubt. The statements of Ranlett and Hughes, in connection with the receipt of Hynes, make this clear, and the tenor of the contract between Ranlett and Hughes corroborates their statements under cath as to the ownership of the stock in trade. If Hughes were to participate in the profits, it does not follow that there was a community of interest in the property itself. The contrary, we think, is established.

In estimating the value of the plaintiffs' property sold, we are inclined to adopt the opinion of the judge *a quo*, who assumed the valuation made shortly before the seizure as more reliable than the evidently vague appraisement made at the time of the sale. Deducting one hundred dollars, the amount sold after the first appraisement or valuation, from $1100, he gave judgment for $1000, and we think correctly.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs

Rehearing refused.