Statement of the Case.
MONROE, J.
In the month of February, 1911, plaintiffs brought suit in the district court for the parish of Pointe Coupee, alleging that the Carter Packet Company, a corporation organized under the laws of this state and domiciled in New Orleans, was indebted to them in the sum of $925, by reason of the fact that they had entered into a contract with said company under which it agreed to transport and deliver a thresher, and other effects, by the steamboat Wm. Garig, owned and operated by it, from Pedesclaux Landing in the parish of Ascension to Raceourci Landing in the parish of Pointe Coupee, and that said thresher was not so transported, but was carried by the steamboat Columbia, also owned and operated by said company, and was destroyed by a fire which likewise destroyed the boat; hence the loss complained of. There was a prayer for citation on the Carter Packet Company, and a citation so addressed was issued and returned as having been served on said company “by personal service of same on E. G. Carter, president of said company,” and there was judgment by default against said company, which was confirmed. Thereafter, on August 4, 1911, plaintiffs caused the steamboat Bob Blanks to be seized under writ of fi. fa. issued upon said judgment; and thereupon Ephraim Carter, coming in by way of intervention and third opposition, alleged that the property seized belonged to him, that he was not a member of said Carter *296 Packet Company and in fact that no such corporation exists, and he prayed that an injunction issue restraining the sheriff from further proceeding, and that he be awarded certain damages, alleged to have been sustained. The sheriff thereupon released the seizure, and, as we infer, the boat proceeded on her trip; but, three days later (on August 7th), when she again appeared in the parish, he again seized her, under instructions from plaintiffs’ counsel, and Carter again intervened and enjoined, after which plaintiffs filed exceptions to the intervention, and then an answer, in which latter they deny generally the allegations of the intervention, allege that the injunction was wrongfully obtained, and pray that it be dissolved with damages. On the trial of the case, it was shown that the intervener is the sole owner of the seized boat, of which his brother, H. M. Carter, is master, at a salary of $200 per month; that he is not a member of, and in fact that there is no such corporation or partnership as, Carter Packet Company. Plaintiffs thereupon offered in evidence advertisements from “The Picayune” of August 1 and September 12, 1911, reading as follows:
“Carter Packet Co.
“Telephone: Main 649, on wharf.
“For Donaldsonville, Plaquemine, Baton Rouge, Bayou Sara, and all way landings to Angola; Atebafalaya to Melville; Black, Ouachita and way landings to Harrisonberg:
“Str. Bob Blanks.
“H. M. Carter, Master. J. V. De Blanc, Clerk. Leaves every Wednesday at 5 p. m. J. H. Wright, Office 307 Camp St., phone, Main 4687; Lord & MePeake, 602 Gravier St., phone, Main 3775, Agents.”
And Capt. H. M. Carter, a witness called by intervener, having been interrogated in regard thereto, gave the following, with other testimony, to wit:
“Q. Was that advertisement made by you? A. I don’t know whether I put it in the paper or not. I couldn’t say for sure. I might have. I don't think I did though. Q. Well, who put it in, if you didn’t? A. Capt. Carter, probably; I don’t know; I might have put it in myself. Q. Is this boat always advertised in that way — Carter Packet Company? Is it a custom to advertise the boat as under the ownership or management of a company which is not-in existence? A. No, sir; that is a name which the Carter brothers have kept, but was not ■ organized by them at all. It is not in existence. I don’t know that such a thing is a custom. Q. Does it include the Wm. Garig and the Columbia? A. I don’t think so. * * * That name was started 17 years ago, by one of my brothers, who is dead. It was just simply called the Carter Packet Company because the Carter brothers were masters of the boat. There is no meaning in it whatever, because there is no such company. There never was one organized that I know anything about. Q. They take contracts for delivering freight in that name, do they not? A. Well, possibly; but each boat is responsible for the freight that it handles. Each boat, independently, handles its freight. * * * Q. Is the name of the Carter Packet Company written on the bills of lading? A. Possibly it is, but the name of the boat is too. When we have a claim, for instance, for lost freight, * ® * the claim is made out against the boat that handled it. She is obliged to p'ay for it, not the Carter Packet Company.”
The evidence further shows that intervener sustained an actual and immediate loss, by reason of the seizure and detention of his boat, and was also-affected in his credit. Plaintiffs offered no other evidence than the order of court granting the first injunction,, the advertisements from the Picayune, and the testimony of their counsel to the,effect that they ordered the seizure of the boat, and, when they learned that the sheriff had released it, without any order of court, or bond, ordered that it be seized again.
Opinion.
[1, 2] Plaintiffs brought suit, and obtained judgment by default against a supposed corporation, said to be domiciled in New Orleans (and not against a supposed partnership or against individuals holding themselves out as partners), upon a contract alleged to have been made with regard to the carriage of certain freight on the steamboat Wm. Garig, and said to have been lost *298 in the burning of the steamboat Columbia. But, save for the allegations of their petition and for their judgment, there is nothing before this court to indicate that any such contract was made, nor does the evidence before us connect the intervener with such contract, or judgment,, or show that the steamboat Wm. Garig, with reference to the service of which the contract is said to have been made, was operated by, or in the name of, the “Carter Packet Company,” though it appears that the boat was owned by E. G. and H. M. Carter. It is shown that, under the judgment, so obtained, the steamboat Bob Blanks was seized, and that the Bob Blanks belonged exclusively to E. G. Carter, the third opponent herein, and, when those facts were developed, it was necessary for the plaintiffs and the sheriff to show, in order to escape the consequences of an unauthorized seizure of the property of one person, under a judgment against another, that E. G. Carter is, in some way, bound by said judgment against the Carter Packet Company, which they have not done, and could not well do. They cannot therefore escape the consequences. The testimony in regard to the extra expense incurred in consequence of the seizure shows that the boat was valued at $18,000; that she was in active service when seized; that she was detained five hours by the first seizure, and three hours by the second; that the use of the boat was worth $25 an hour; that the wages of the officers and crew, pending the delays, amounted to $91.20; the fuel consumed to $16, the extra stores required, to $64.70; the expenses incurred in connection with the bonding of the boat, to $88.55. Capt. Garter also testifies that, by reason of the delay, other boats went ahead of him and he was short, in his average cargo, to the extent of $257; that, by being thus thrown behind, they were compelled to deliver freights, which they would otherwise have delivered in the day, at night, in the rain, on slippery banks, thus losing time in their landings, which extra expense he estimates at $200; that, after the seizure, they were compelled to pay cash, in advance, for their supplies, whereas their purchases had previously been delivered C. O. D., or the bills had been sent at the end of the month or trip, and he estimates the injury to opponent’s credit at $1,000. The total amount claimed, in the last petition filed by intervener, from the plaintiffs and the sheriff, in solido (including $5,000, as punitory damages), is $6,750. Concerning the sheriff, it is shown that he was at once notified that the property seized did not belong to the supposed judgment creditor, and he should have demanded, and perhaps did demand and obtain, a bond of indemnity. We are of opinion that there should be allowed $500 on account .oí actual loss occasioned by the seizure of the boat, and $500 for the injury to intervener’s credit. Duperron v. Van Wickle, Sheriff, et al., 4 Rob. 89, 39 Am. Dec. 509; Lobdell v. Bank & Sheriff, 8 La. Ann. 117; Benner & Ranlett v. Michel & Gallagher, 23 La. Ann. 489; Macias v. Sheriff et al., 41 La. Ann. 300, 6 South. 538.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and annulled, and that there now be judgment in favor of the intervener and third opponent, perpetuating the injunction sued out by him and condemning the plaintiffs, Frank Tregre and Albert Shexnayder and the sheriff, Ernest G. Beuker, in solido, in the sum of $1,000, with legal interest from the date of this judgment, together with all costs.